232 P.2d 965

### QUINN v. HARTFORD ACCIDENT & INDEMNITY CO.

No. 7702.

Supreme Court of Idaho.

July 3, 1951.

450

Stephen Bistline, Sandpoint, W. J. Nixon, Bonners Ferry, for appellant.

Raymond T. Greene, Jr., and Hardy C. Lyons, Sandpoint, for respondent.

PORTER, Justice.

On May 15, 1948, one Fremont Kelson, as contractor, and appellant, as owner, entered into a Building Agreement, the material portions of which read as follows:

"That the contractor and the owner for the consideration hereinafter named, agree as follows:

"I.

"The contractor shall furnish all of the materials and perform all of the work for the completion of a garage building 70' x 80' and a furnace room 18' x 26' to be built as shown on the drawings and ·described in the specifications formerly approved by the owner; and shall do everything required by this agreement, the general conditions of the contract, the specifications and the drawings.

"II.

"The work to be performed under this contract shall be commenced at once and shall be substantially completed not later ·than the 1st day of July, 1948, unless prevented by accidents, weather, strikes, or alterations or additions ordered by the owner in writing or other reasonable cause.

"III.

"The owner shall pay the contractor for the performance of the contract, subject to additions and deductions provided therein, in current funds as follows: .

"$8,500.00 total contract price payable:

"$6,000.00 upon the signing and execution of this agreement, receipt of which is hereby acknowledged.

"IV.

"Final payment of $2500.00, twenty-five hundred dollars, shall be due and payable when the building is fully completed.

\* \* \* \* \* \*

"VI.

"The contractor shall furnish to the owner a good and sufficient surety bond in the sum of $6000.00, six thousand dollars, for the performance by the contractor of the terms and provisions of this agreement on the part of said contractor required to be performed, such bond to be and remain in force until 24 months after the conclusion of this contract."

In pursuance of the building agreement, appellant was furnished with a surety bond,

signed by Kelson as principal and respondent as surety, in the sum of $8,500.00, containing, among others, the following provisions:

"Whereas, the Principal has entered into a certain written contract with the Obligee, dated the 12th day of May, 1948, to Completion of Garage Building and Furnace Room which contract is hereby referred to and made a part hereof as fully and to the same extent as if copied at length herein.

"Now, Therefore, the condition of this obligation is such that, if the Principal shall faithfully perform the contract on his part, and shall fully indemnify and save harmless the Obligee from all cost and damage which the Obligee may suffer by reason of failure so to do and shall fully reimburse and repay the Obligee all outlay and expense which the Obligee may incur in making good any such default, and shall pay all persons who have contracts directly with the Principal for labor or materials, then this obligation shall be null and void, otherwise it shall remain in full force and effect.

"Provided, However, it shall be a condition precedent to any right of recovery hereunder that, in the event of any default on the part of the Principal, a written statement of the particular facts showing the date and nature of such default shall be immediately given by the Obligee to the Surety and shall be forwarded by registered mail to the Surety at its Home Office in the City of Hartford, Connecticut."

Kelson commenced construction of the foundation of the building about May 20, 1948, and did work evaluated at $226.50. He thereupon discontinued such construction and did no further work on the building. Appellant thereafter constructed the building at a cost in excess of $8,500. Thereafter, he brought this action against respondent for damages for the default of Kelson under the building agreement. Respondent answered the complaint and the cause was tried to the court sitting without a jury.

At the close of the evidence for appellant, respondent made a motion for nonsuit upon the ground there never were any original plans and specifications accompanying the building agreement, although such agreement recites that the building was to be built as shown on the drawings and described in the specifications formerly approved by the owner. Respondent's motion for nonsuit was by the court denied. Thereupon respondent called the witness Kelson who testified he could not remember any original plans, drawings and specifications other than a rough pencil sketch. Both sides having rested, respondent renewed its motion for nonsuit and asked that judgment be entered in favor of respondent and against appellant for all the reasons stated theretofore. The court granted the motion and directed the clerk to let the record show that the action be dismissed for want of sufficient evidence. A formal judgment of dismissal was entered. From such judgment, appellant has

appealed to this court. Appellant filed a motion for new trial which motion was by the court denied. Appellant also has appealed from the order denying the motion for new trial.

■■ By his assignments of error, appellant urges the court erred in entering the judgment of dismissal for the reason that the evidence was sufficient too make a prima facie case in favor of appellant. The first question presented to us is whether the judgment of dismissal was a judgment on a nonsuit as urged by appellant, or a judgment on the merits as contended by respondent. It would have been error for the trial court to enter a judgment on the merits without first making and filing findings of fact and conclusions of law unless the same were waived. Sections 10–302, 10–303 and 10–304, I.C.; Stewart Wholesale Co. v. District Court, 41 Idaho 572, 240 P. 597. No findings of fact and conclusions of law were made and no waiver appears. It seems clear that the judgment of dismissal was entered following a nonsuit.

Respondent urges in support of the court's action in granting the motion for nonsuit, that the surety bond was void because there were no original plans, drawings and specifications in connection with the building agreement, although it is recited to the contrary in such agreement. Respondent's brief contains no list of "Points and Authorities" and it cites no authorities in support of its contention in this respect.

■ The evidence of plaintiff was that there were three original sheets of drawings, plans and specifications made by Kelson in ink; that there was only one copy of same which was retained by Kelson; that after respondent was notified of Kelson's default, appellant requested such plans and specifications from Kelson and he had lost or misplaced them and could not find them. Upon a motion for nonsuit plaintiff's evidence is to be considered as true. Respondent's contention assumes contrary to appellant's evidence that there never were such plans and specifications in existence. Appellant fails to distinguish between the explained absence of such plans and specifications from the evidence, and their nonexistence in the first instance. We, therefore, deem it unnecessary to decide what would be the effect if there were in fact no original plans and specifications.

■■ Absence of the plans and specifications from the evidence might preclude appellant from recovering any damages claimed for the excess of the cost of construction of the building over the contract price named in the building agreement as there would be no evidence that the building conformed to the plans and specifications agreed upon. However, in granting the motion for nonsuit, the trial court disregarded the undisputed fact that appellant paid to Kelson $6,000 cash under the building agreement; and the evidence shows appellant was at least damaged to the extent of the difference between the $6,000 paid and the $226.50 representing

454

the reasonable value of the work performed by Kelson. If the evidence disclose that the plaintiff is entitled to any relief within the issues, it is error to grant a motion for nonsuit.

When passing upon the motion for nonsuit, the trial court advanced a reason for granting such motion not contained in respondent's motion by stating the evidence did not show appellant had given written notice by registered mail of Kelson's default to·respondent, at its offices in Hartford, Connecticut. Respondent appears to urge that the granting of the motion for nonsuit can be sustained on this ground. Respondent pleaded as an affirmative defense the failure to give such notice, but did not plead any prejudice therefrom. Appellant's evidence was that he notified respondent each month at its California offices of the progress or lack of progress on the building upon forms furnished by respondent; that on September 22, he notified respondent by letter (Plf's Exh. No. 3), addressed to its offices in Spokane, Washington, of Kelson's default; and that in response to such letter a representative of respondent called upon appellant. It thus appears respondent at all times had actual notice of Kelson's actions under the building agreement; and it does not appear from the evidence that respondent was in any way prejudiced in its rights by the failure of appellant to give notice to respondent at its office in Hartford, Connecticut. Respondent's position in this respect is not well taken. Leach v. Farmer's Automobile Interinsurance Exchange, 70 Idaho 156, 213 P.2d 920.

We conclude that it was reversible error for the trial court to grant the motion for nonsuit and enter judgment of dismissal thereon. This conclusion makes it unnecessary for us to determine whether a motion for new trial will lie after a judgment entered on a nonsuit or whether the showing made on the motion for new trial was sufficient to require the granting thereof.

The judgment is reversed and the cause remanded for new trial. Costs awarded to appellant.

GIVENS, C. J., and TAYLOR, THOMAS and KEETON, JJ., concur.