571 P.2d 769

**Myron P. SORENSON and Beulah R. Sorenson, husband and wife, and J. Gaurth Thompson and Carol Joyce Thompson, husband and wife, Plaintiffs-Appellants,**

v.

**Rex ADAMS and Ruth L. Adams, husband and wife, Defendants-Respondents.**

No. 12149.

Supreme Court of Idaho.

Nov. 22, 1977.

Robert M. Kerr, Jr., of Kerr, Williams & Clarke, Blackfoot, for plaintiffs-appellants.

Herman E. Bedke, Burley, Walter G. Mann of Mann & Hadfield, Brigham City, Utah, for defendants-respondents.

BISTLINE, Justice.

This dispute arose out of an alleged shortage of the quantity of tillable acres involved in the sale of a farm.

In the spring of 1970, J. Gaurth Thompson, plaintiff-appellant, and David L. Bird approached Rex Adams, defendant-respondent, regarding the purchase of Adams' farm, situated in Power and Bannock Counties, Idaho. Adams stated that he wanted to sell the farmlands, some equipment, and a grain elevator he owned in Virginia, Idaho, for the sum of $280,000. After two

meetings, Bird withdrew and was replaced by Thompson's uncle, Myron P. Sorenson, the other plaintiff-appellant in this case.

Sorenson and Thompson met with Adams in mid-June, 1970. As at the previous meeting with Thompson and Bird, Adams had produced a paper from the United States Department of Agriculture, Agricultural Stabilization and Conservation Service (A.S.C.) showing the farm's wheat allotment of 231.3 acres, the barley allotment of 198 acres, and the conserving base of 589 acres for that year of the federal program. The stamp at the top of the form bore Adams' name, address, farm number and the headings, "FARM–LAND——1307—— CROP–LAND——1238." The contract and the warranty deed which the parties signed on July 15, 1970, described the property without any mention of acreages involved, either as to total, or as to the particulars of tillable, range, or waste land. Appellants took possession immediately thereafter.

Sorenson and Thompson allege that their suspicions regarding the amount of tillable acreage were first aroused on discovering a large amount of seed left over from the spring planting of 1972. A check of A.S.C. maps convinced them that the property contained only 1,076 acres of tillable land. They traveled to Tremonton, Utah, on May 24, 1972, and confronted Adams with the discrepancy. Adams turned to his own maps and adding machine, but was unable to make the figures add up to the 1,238 acres of "farmland" listed on the A.S.C. form. Sorenson requested Adams to make some compensation for the shortage. Adams declined, saying he would consult with his attorney. This litigation followed. The case went to trial in September, 1975, with plaintiffs-appellants alleging fraudulent misrepresentation and seeking $33,000 damages for the shortage of tillable (approximately 165 acres at $200 per acre).

After plaintiffs rested, defense counsel made a motion for "nonsuit," pursuant to I.R.C.P. 41(b). The trial court granted the motion and plaintiffs appeal from that or-

der.[1] They also appeal from the denial of their motions to amend the complaint and for a new trial, which assignments of error we need not reach.

## I. THE PROCEDURES TO BE FOLLOWED IN RULING ON A MOTION UNDER I.R.C.P. 41(b).

Plaintiffs here argue that they made out a *prima facie* case of fraud, and thus that the trial court erred in dismissing the action. The argument misconceives the nature of a motion for involuntary dismissal which defendant makes at the close of plaintiffs' evidence in a non-jury case, pursuant to I.R.C.P. 41(b).

In pre-Code days, it is true, a plaintiff need only have made out a *prima facie* case in order to avoid being "non-suited," as it was then called. In making such a determination the trial court was instructed that,

"It is axiomatic that upon motion for nonsuit or directed verdict, the evidence must be construed in the light most favorable to plaintiff." *Bogovich v. Capitol Silver-Lead Mining Co.,* 71 Idaho 1, 3, 224 P.2d 1078, 1079 (1950).

*Bogovich* was a *jury* action. Shortly afterwards, in *Quinn v. Hartford Accident & Indemnity Co.,* 71 Idaho 449, 232 P.2d 965 (1951), the Court applied the same standard in reversing an order granting a motion for nonsuit in a *non-jury* case:

"If the evidence disclose that the plaintiff is entitled to any relief within the issues, it is error to grant a motion for nonsuit." 71 Idaho at 454, 232 P.2d at 967.

Similarly, in the non-jury case of *Patton & Anderson v. Melior,* 78 Idaho 336, 303 P.2d 242 (1956), it was held that,

"A motion for nonsuit admits the truth of the adversary's evidence, and every inference of fact that may be legitimately drawn therefrom [citing *Quinn v. Hart-*

*ford Accident & Indemnity Co., supra* ]." 78 Idaho at 337, 303 P.2d at 243.

This standard was rejected, as to non-jury cases, in *Stratton v. Stratton,* 87 Idaho 118, 391 P.2d 340 (1964). We there emphasized the fact that Idaho's adoption of the "federal rules" in 1958 brought about a whole new ball game where there is a "Motion for Involuntary Dismissal" under Rule 41(b) in a non-jury trial. We held that the "prima facie" test applicable in jury cases is inappropriate for non-jury cases,

". . . for if the court, which is the trier of the facts in such cases, determines that the plaintiff has failed in his burden of proof and grants a motion to dismiss, *it is a determination of the cause on its merits . . . .*" 87 Idaho at 125, 391 P.2d at 344.

The following year *Grieser v. Haynes,* 89 Idaho 198, 404 P.2d 333 (1965), made it clear that the *Stratton* decision brought Idaho civil procedure in line with the amended federal rule.

The case-law change in Rule 41(b) was codified in 1975 when the federal amendment of the rule was added to the Idaho rule, so that it now reads:

"Rule 41(b). Involuntary dismissal—Effect thereof.—. . . After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. *The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule*

1. The final order or judgment in the case reads as follows:

"Plaintiffs rested.

"Defendants moved for non-suit on the grounds of failure to prove fraud against these defendants. Said motion was granted by the Court, the Court finding that as a matter of fact

and matter of law, no fraud had been proven. Plaintiffs thereafter moved to amend on the grounds of mutual mistake of fact, with objections being voiced by defendants.

"IT IS HEREBY ORDERED that defendants' motion for non-suit, be and the same is hereby granted."

*52(a)."* (Emphasis supplied). (Italicized words denote the 1975 amendment.)

It is thus clear that when defendant moves for an involuntary dismissal at the close of plaintiff's presentation in a non-jury case, the court sits as a trier of facts and is not required to construe all evidence and inferences to be drawn therefrom in the light most favorable to plaintiff. *But see, In re Estate of Stibor,* 96 Idaho 162, 164, 525 P.2d 357, 359: "This court has repeatedly held that the testimony of a witness which is not inherently improbable and is not contradicted and impeached may not be disregarded. [Citing cases.]" When the trial court grants a defendant's 41(b) motion, the judgment which it renders is a judgment on the merits. The findings of fact and conclusions of law required by Rule 52(a) must be made. Where such findings are lacking, this Court is hampered in the performance of its appellate function.

In *Paullus v. Liedkie,* 92 Idaho 323, 442 P.2d 733 (1968), error was, as here, assigned to "the action of the trial court in dismissing" on a 41(b) motion. In that case, where there were no findings or conclusions, judgment was reversed and the cause remanded with directions to make findings and conclusions.

Similarly, in *Fairchild v. Fairchild,* 96 Idaho 375, 529 P.2d 771 (1974), dismissal was entered on defendant's 41(b) motion without the requisite findings of fact and conclusions of law. Again error was not assigned in that regard, but only with regard to the trial court's dismissal of the action. Citing *Paullus,* this Court summarily reversed, stating that the assignments of error involved factual issues which could not be properly reached in the absence of findings of fact from the trial court.

On the other hand, this Court has on rare occasions gone to the evidentiary record in ruling on appeals from involuntary dismissals when the record was sufficiently clear that the absence of findings of fact did not prevent a complete understanding of the issues. *See, Killinger v. Iest,* 91 Idaho 571, 428 P.2d 490 (1967); *Merrill v. Merrill,* 83 Idaho 306, 362 P.2d 887 (1961).

A final judgment entered at the conclusion of a plaintiff's case on a 41(b) motion is a determination on the merits, and requires findings of fact and conclusions of law, every bit as much as when the final judgment is entered after *both* sides have made their presentations. I.R.C.P. 52(a). Defendants who have made successful 41(b) motions should complete the record by reminding the trial court that findings are required. Plaintiffs must ask the trial court to comply with Rule 52(a) as a condition precedent to bringing the case here. Compliance with the rule of writing out specific findings and legal conclusions—as we have recently noted in *Compton v. Gilmore,* 98 Idaho 190, 560 P.2d 861 (1977)—is a salutary practice which requires a trial court to give full consideration to the entire record as the purported justification for its own announced ruling.[2]

Although failure to make findings and conclusions is not assigned as error, the defendants urge upon us that the trial court did in fact make the requisite findings. We can only assume that defendants would have us accept the trial court's bench remarks, made in passing upon the motion, as the equivalent of compliance with Rule 52(a) which reads: "If an opinion or memorandum decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein." The defendants are not on sound ground; there are no findings

---

**2.** In that case the observation was made that a trial court, prior to any declaration as to which party was entitled to prevail, where the case was fully submitted by both parties, could properly ask respective counsel for both parties to aid the court by presenting proposed findings which counsel believed to be substantiated by the evidence. On the oral granting of a Rule 41(b) motion, however, the court is announcing its decision for the defendant and would then properly make its own findings of fact and conclusions of law. Of course, nothing would preclude the trial court from taking such a motion under advisement and requesting both parties to submit findings believed to be justified by the evidence, with supporting briefs, and, if available, transcripts or partial transcripts of the testimony.

of fact and conclusions of law; there is no memorandum opinion of the trial court. A trial court's bench remarks are simply that, and nothing more. A trial court in fulfilling the requirements of Rule 52(a) may very well decide to make findings quite different from the indications stated in passing on the motion. Bench remarks, sometimes referred to as tentative impressions of what the evidence shows, do not substitute for nor rise to the dignity of written findings of fact and conclusions of law, either separately stated, or embodied in a written memorandum opinion.

The defendants' contention that the trial court made the requisite findings can not be sustained. Nonetheless, the trial judge did carefully explain the *ratio decidendi* of his conclusion to grant the motion, and he stated his belief that all witnesses had testified truthfully. Although the case was submitted on plaintiffs' evidence only, it did include "statutory" cross-examination (under Rule 43(b)) of the defendant Rex Adams and his answer to pretrial requests for admissions. For the limited purpose of providing guidance on remand, we point out briefly wherein our views differ from those orally expressed by the trial court in passing upon the motion. We have the benefit of the recorded testimony and considerably more time than was available to the trial court.

## II. THE DECISION OF THE TRIAL COURT.

In granting defendant's motion for nonsuit, the trial court stated:

"The law of this state, and apparently the law of the State of Utah, you've got to have those six or eight elements of clear and convincing evidence that fraud did exist, and I can't find those elements having been fulfilled, and as a matter of law and as a matter of fact I so find at this point so your cause of action as to fraud, motion for nonsuit as to cause of action for fraud is granted."

The "elements" the court had in mind are familiar and have been stated by this Court most recently in the case of *Zuhlke v. An-*

*derson Buick, Inc.,* 94 Idaho 634, 496 P.2d 95 (1972). An action for fraud involves:

1. A representation.
2. Its falsity.
3. Its materiality.
4. The speaker's knowledge of its falsity or ignorance of its truth.
5. His intent that it should be acted on by the person addressed in a manner reasonably contemplated.
6. The hearer's ignorance of its falsity.
7. His reliance on its truth.
8. His right to rely thereon.
9. His consequent and proximate injury.

### (1) *The Speaker's Knowledge*

One of the elements which proved most troublesome to the trial court was that of the speaker's knowledge. In this regard, the court remarked:

"I think basically there was a mutual mistake of fact involved but this was never pleaded. I think Mr. Adams thought there was 1238 acres and they [plaintiffs] thought there was 1238, and based upon that they entered into the agreement. . . . In fact the evidence is that he himself [Adams] was surprised when Mr. Sorenson went to his home and said, 'Add it up yourself.'"

Appellants Sorenson and Thompson point out that during cross-examination at trial, Adams gave the following testimony:

Q Now you bought this property that was described in this contract in about 1959?

A Yes.

Q Is it true that there was no change made in the acreage which was plowed or farmed during that period of time?

A There was no change.

. . . . .

Q Now is it true there were approximately 1,067 acres on that place plus or minus 10 acres either way?

A Yes.

Q Of farmed land?

A Farmed land.

Moreover, in pre-trial discovery procedures both Rex Adams and his wife, responding to the following question:

"During the years of farming and operation from 1959 through 1970, the Defendant Rex Adams has known that the total farmed acres in the said described premises were approximately 1,067, or within an acre or two thereof."

gave this verified answer:

"That Rex Adams knew that the farm land was under 1100 acres."

The testimony and admission that Adams had and knew that he had 1,067 tillable acres, give or take two to ten, is strongly suggestive that there was no mistake upon the part of Adams.

## (2) *Defendant's Representation and Plaintiffs' Reliance*

The gist of the trial court's theory of "mutual mistake" was that it was not Adams who represented the farm land as comprising 1,238 acres, plus an absence of evidence that Sorenson and Thompson relied on any such representation. The "mutual mistake," according to the trial court's bench remarks, consisted simply in the fact that *both parties* relied on the erroneous figures on the A.S.C. document:

"There is not one word in this record that Mr. Adams orally told them at any time they could rely on 1,238 acres. . . . That representation was made to both Mr. Adams, or, made to Mr. Adams by the A.S.C. Office, by the government, not by Mr. Adams. There is not a word in this record that he intentionally attempted to indicate to them that there was— this was fact."

". . . the evidence of everybody that testified said they relied upon the instrument they saw that said 1,238 acres. They didn't rely on a thing Mr. Adams told them. That's the evidence in this case. They didn't rely on any statement that Mr. Adams made."

Again, the evidence seems to suggest otherwise, keeping in mind that the trial court stated his belief in the credibility of all the witnesses. Appellants point to Sorenson's testimony that,

". . . as we were looking at this notice, I asked him [Adams] if that was the correct number of acres, and he said, yes, that's about right. He said there's about 700 acres on the north side of the road and about 500 acres on the south side of the road."

As to whether or not the plaintiffs relied entirely on the A.S.C. paper, and not anything Adams said, appellants note that the testimony of Sorenson was again to the contrary:

A On the stencil of the name up here. There is also an item under the farm land, an item under crop land, and the figure 1,238 appears on the crop land.

Q You recall seeing that figure that day as you were talking to Mr. Adams?

A Yes, sir.

Q That is the figure you were referring to in your conversation when you asked him?

A That is the figure I asked him. I asked him, "Now is that the right number of acres?" And he assured me that it was about right.

Q Now state *whether* or not in purchasing this farm *you relied upon this figure of 1,238* acres?

A Certainly.

(Emphasis added.)

There is much, then, to sustain appellants' argument that the uncontradicted evidence most strongly indicates that Rex Adams knew he owned less than 1,100 acres of farm land; that on several occasions he represented to the prospective buyers that he owned 1,238 acres of farm land; and that the buyers relied on this representation.

## (3) *Fraud as a Matter of Law*

 The court stated, "There isn't one word in this record of any fraud perpetrated by Mr. Adams upon these individuals." In so ruling, it appears to us that the court was unmindful of Idaho case law touching on the doctrine of constructive fraud, and the court was thus applying an incorrect

standard as to what constitutes actionable fraud, which may be intentional or constructive. What was said in *Turner Agency v. Pemberton,* 38 Idaho 235, 221 P. 133 (1923), appears to be applicable here:

". . . The trial court was evidently of the opinion that the representations alleged must have been made knowingly and wilfully and with intent to deceive in order to be material. It therefore confined itself to finding that respondent did not make such representations knowingly, wilfully and with intent to deceive [in order to be material]. . . . The idea back of this evidently was that an actual fraudulent intent would have to be proved to make a defense. Generally speaking, this is true. There is, however, a well-established exception in a case where the circumstances impose upon the vendor a special duty to know the truth of his representations, or where the nature of the situation is such that he is presumed to know the facts to which his representation relates. In such cases a misrepresentation is fraudulent even though not made knowingly or wilfully or with actual intent to deceive." 38 Idaho at 239, 221 P. at 135.

In short, the general rule is that "a vendor may be liable in tort for misrepresentations as to the area of land conveyed, notwithstanding such misrepresentations were made without actual knowledge of their falsity." Annot., Tort Liability for Damages for Misrepresentations as to Area of Real Property Sold or Exchanged, 54 A.L. R.2d 660, 680 (1957). The reason, of course, is that the parties to a real estate transaction do not deal on equal terms. An owner is presumed to know the boundaries of his own land, the quantity of his acreage, and the amount of water available. If he does not know the correct information, he must find out or refrain from making representations to unsuspecting strangers. "Even honesty in making a mistake is no defense as it is incumbent upon the vendor to know the facts." *Fowler v. Uezzell,* 94 Idaho 951, 500 P.2d 852 (1972); *Lanning v. Sprague,* 71 Idaho 138, 143, 227 P.2d 347 (1956).

The trial court's belief that only the A.S.C. made a "representation" and that Adams was not making any representation in merely showing the A.S.C. document is not an absolute proposition of law. The act of "representing" may take many forms:

"While false representations generally consist of verbal or written statements, a misrepresentation in words is not essential. . . . [A] misrepresentation need not be express, but may be implied or inferred from circumstances which are in fact equivalent to positive representation, or from acts or conduct, *such as the exhibiting of fraudulent or misleading documents,* or maps or plats. . . ." (Emphasis supplied.) 37 Am.Jur.2d *Fraud* § 42 (1968).

Even silence, in circumstances where a prospective purchaser might be led to harmful conclusions, is a form of "representation." *Brooks v. Jensen,* 75 Idaho 201, 215–216, 270 P.2d 425 (1954).

Finally, we observe that respondents, in their effort to sustain the judgment, challenge appellants' *right to rely* on the A.S.C. figures in light of their opportunity to check the figures themselves at the tax assessor's office, or by a survey of the land. The trial court did not address this particular element of fraud in its bench remarks. Such argument, however, has never found favor with this Court:

"False statements found . . . to have been made and relied on cannot be avoided by the appellants by the contention that the respondents could have, by independent investigation, ascertained the truth.

"The appellants having stated what was untrue cannot now complain because respondents believed what they were told. Lack of caution on the part of respondents because they so believed, and the contention that respondents could have made an independent investigation and determined the true facts, is no defense to the action." *Weitzel v. Jukich,* 73 Idaho 301, 305, 251 P.2d 542, 544 (1953). *And see, Lanning v. Sprague, supra.*

The judgment is reversed and the cause is remanded for a new trial. Costs are awarded to the appellants.

McFADDEN, C. J., and DONALDSON and BAKES, JJ., concur.

SHEPARD, J., dissents without opinion.