588 P.2d 458

**B & F INC., d/b/a Quinn's Lounge, an Idaho Corp., Plaintiff-Appellant,**

v.

**INTERMOUNTAIN GAS COMPANY, Defendant-Respondent.**

**No. 12300.**

Supreme Court of Idaho.

Dec. 28, 1978.

William J. Tway of Tway & Tway, Boise, for plaintiff-appellant.

Myron D. Gabbert, Jr. of Moffatt, Thomas, Barrett & Blanton, Boise, for defendant-respondent.

KRAMER, Justice Pro Tem.

This appeal arises out of the involuntary dismissal of plaintiff-appellant's, B & F Inc., cause of action for damages for lost business profits based on the alleged negligent installation of air conditioning equipment by the respondent, Intermountain Gas Company.

The primary asset of B & F Inc. is Quinn's Lounge, a combination restaurant and bar. Quinn's Lounge was purchased in 1970 and at that time it was cooled in the summer months by a swamp cooler. The owners were dissatisfied with that system and contacted the respondent Intermountain Gas about leasing air conditioning equipment. After taking measurements, and making other investigation, Intermountain Gas installed a seven and one-half ton unit in August of 1971. However, this equipment did not adequately cool the business in the summer months. In August of 1975 six more tons of capacity were added to the system and it has performed° adequately since that addition.

The present action was filed on October 9, 1975 seeking $53,000 in lost business profits as a result of defendant's alleged negligent installation of air conditioning equipment by Intermountain Gas Company in August of 1971. At trial the co-owners testified that the overhead expenses were fairly constant from 1971 to 1975 and that business volume increased in the summer months of 1971 when a swamp cooler was operating. However, after the installation of the seven and one-half ton air conditioning unit by Intermountain Gas in August of 1971, testimony showed that the volume decreased as to the subsequent summers. The co-owners testimony also showed that business volume increased every year except the summer months. The accountant for B & F Inc. testified that Quinn's Lounge had a stable overhead and that the overhead was not included in "gross profit." "Gross profit" is equal to gross income less cost of sales. The accountant's testimony was supported by a document entitled "Schedule of Gross Profit" which was admitted into evidence as Exhibit 3. Exhibit 3 shows gross income, cost of sales, and gross profit for the entire summer in each year from 1971 through 1975. For the years 1972 through 1975, it shows gross profit for the period from May 1 through September 30. In 1971, a shorter period is shown (July 1 through September 30). In the years 1972 through 1974, gross profit was relatively stable at $35,000. In August of 1975 the additional air conditioning equipment was installed. In the summer of 1975 the gross profits were up approximately $30,000 to a total of $65,000. Exhibit 3 also shows "gross profit percentages" for the years 1971 through 1975. "Gross profit percentage" is the percentage of gross income which is gross profit. (I. e., if the gross profit percentage is 60%, sixty cents out of every dollar of gross income is gross profit.) In 1971, the gross profit percentage was 63%. It was 54% in 1972, 53% in 1973, 50% in 1974, and 57% in 1975.

At trial several patrons of the restaurant testified that they estimated they spent certain approximate amounts of money at Quinn's every month, but during the hot months they went elsewhere because of the poor air conditioning. From this basis the customers estimated the amounts of revenue Quinn's lost from them.

At the close of plaintiff's case, the trial judge dismissed the action pursuant to I.R. C.P. 41(b) on the sole ground that the loss of business profits had not been proved with reasonable certainty. However, the trial judge did hold that a prima facie case had been shown with respect to liability.

Appellant argues that it proved damages for loss of business profits with requisite certainty under the standards set forth in *Jolley v. Puregro Co.*, 94 Idaho 702, 496 P.2d 939 (1972) and *McLean v. City of Spirit Lake*, 91 Idaho 779, 430 P.2d 670 (1967). Their argument is that since the overhead expenses were paid, the lost profits were the reduction in gross income less the cost of goods sold. The cost of goods sold was reflected by the gross profit percentage presented by the accountant. Appellant maintains it proved its loss of gross income by the patrons' testimony and by the accountant's exhibit.

Respondent argues that most of the patrons' testimony was guess work and that the accountant's exhibit while indicating gross income from May through September for the years in question, did not break down gross income by the month. Thus, the $30,000 increase for the summer of 1975 may have been attributable to the other months prior to the installation of the new air conditioning equipment.

In *McLean v. City of Spirit Lake, supra*, this Court acknowledged the general rule that damages for loss of anticipated profits must be proven with reasonable certainty. The reasonable certainty standard was met in *McLean* because gross income for comparable periods was shown along with overhead expenses. This Court stated in *Jolley v. Puregro Co., supra*, that reasonable certainty requires more than a mere estimate of net profit as a percentage of gross income. There must generally be supporting evidence of overhead expenses or other costs of producing income. We have no doubt that appellant's theory in proving its damages might have met the reasonable certainty standard enunciated in *McLean* and *Jolley*, if it had adequately shown the decline in gross income caused by the faulty air conditioning. Since overhead expenses were constant, a proven decline in gross income could have been multiplied by the gross profit percentage to determine the actual lost profits. However, the decline in gross income was not adequately proven in this case. The remarks of the trial judge from the bench reveal that he was unimpressed with the patrons' testimony and with Exhibit 3.

Also it is clear from the evidence so far that there was some sort of loss of business because of the lack of proper air conditioning, but the Court has no way to determine what that loss was. This is the problem the Court has in this case. The evidence submitted by having individual customers come in and indicate that they spent, avoided the place and spent money elsewhere, is not definite enough upon which the Court can make a judgment as to what the loss was. It is too much involved with conjecture and speculation.

Now, this gross profit sheet, that is inconclusive, too. I can't tell from looking at it when it is in quarters like this whether there was a sudden jump in August after the air conditioning was installed. I can't tell what it was from this in the rest of the months during the year; I can't tell whether there actually was a drop during the summer months. There is evidence from witnesses that it did drop, but again, how much. I have no way of telling how much. I would not have any basis upon which I can fix any certain amount of damages based on the evidence that the Court has received so far. That is the problem with the case.

In view of that I don't think I have any choice, but to dismiss it because of the fact that the profits haven't been or the loss of gross profit hasn't been shown with enough adequacy for the Court to make a decision on the amount of any damages, assuming that there is a cause of action. And that is the decision of the Court. I will dismiss it for that reason.

When a motion is made under Rule 41(b) the trial judge sits as a trier of fact and is not required to construe all the evidence in favor of the plaintiff. *Sorenson v. Adams*, 98 Idaho 708, 571 P.2d 769 (1977). The patrons' testimony, albeit not inherently improbable as to the amount of money lost to Quinn's, was based too much on conjecture and speculation to satisfy the reasonable certainty standards enunciated

by this Court. The accountant's testimony and the supporting exhibit do not pinpoint the 1975 increase in gross income as relating to a period subsequent to the installation of the new air conditioning equipment. No gross income figures were offered for 1976, nor for the non-summer months in the years 1971 through 1975. Under the circumstances, the co-owner's estimate of the decline in gross income in this case is just as unsubstantiated as the owner's estimate of profit percentage in *Jolley*. Because appellant failed to adequately prove its loss of gross income, there was no accurate figure for the trial court to use in connection with the gross profit percentages. Therefore, the judgment of the trial court is affirmed. Costs to respondent.

SHEPARD, C. J., McFADDEN and DONALDSON, JJ., and THOMAS, J. Pro Tem., concur.