606 P.2d 473

**Rosalie KEENAN, Plaintiff-Appellant,**

v.

**Luise A. BROOKS, Cecilia A. Rattle and Wilburta E. Taylor, Defendants-Respondents.**

**No. 12335.**

Supreme Court of Idaho.

Feb. 14, 1980.

William B. Taylor, Jr., Grangeville, for plaintiff-appellant.

William H. Foster, Grangeville, for defendants-respondents.

SHEPARD, Justice.

This is an appeal from a judgment in favor of the defendants-respondents, Brooks, Rattle and Taylor, in an action brought by plaintiff-appellant Keenan to set aside a gift deed on grounds of mistake, fraud, non-delivery and undue influence. The trial court granted defendants' motion for involuntary dismissal at the close of plaintiff's case. We affirm.

Daisy Prather was the mother of four daughters, all of whom are parties hereto and who are the only surviving children of Daisy Prather. One of those daughters, plaintiff-appellant Keenan, brought this action against her sisters, defendants-respondents, to set aside a gift deed made by their mother, Daisy Prather, purporting to convey to the respondents real property consisting of certain mining claims located in Idaho.

Daisy Prather was a widow, having been predeceased by her husband in 1967. She thereafter owned four interests in real property: a 391 acre ranch at Pleasant Grove, California, where the Prathers lived until their deaths; a separate residence in San Jose, California; a mining property in Almadin, California; and mining properties located in Idaho County, Idaho. Only the Idaho mining properties are involved in the instant action. Plaintiff-appellant Keenan moved onto the Prathers' Pleasant Grove ranch in 1958 and resided in a separate house. Appellant Keenan's son, Wendell Keenan, Jr., and his wife also resided in a separate house on the same ranch.

After the death of her father, appellant Keenan made several offers to purchase the Pleasant Grove ranch, and in 1970, appellant Keenan purchased the ranch from her mother, with Mrs. Prather retaining an interest therein as a beneficiary of a deed of trust. However, two months later, Mrs. Prather, without receiving any consideration therefor, assigned her interest in that deed of trust to appellant Keenan and her husband. Approximately three months later, Mrs. Prather asked respondents Brooks and Taylor to come to the ranch to discuss the possibility of leasing the Idaho mining properties to Wendell Keenan, Jr. During that meeting they also discussed with Mrs. Prather certain gift deeds for the conveyance of Mrs. Prather's remaining properties. None of those deeds were executed during that meeting.

Respondent Brooks testified that during October she received a communication from her mother stating that appellant Keenan was after her mother to make a will and if Brooks desired the execution of the gift deeds which had previously been discussed, it should be done immediately. A daughter of Mrs. Brooks delivered the gift deed to the Idaho mining property to her grandmother, Mrs. Prather, which was then executed before a Notary Public. The record is unclear whether Mrs. Prather actually read the gift deeds before their execution. Two additional gift deeds, executed that same day, purported to transfer to the respondents here an undivided one-third interest in Mrs. Prather's San Jose residence and the California mining property. No consideration was paid by the respondents for any of those deeds.

In May, 1971, appellant Keenan, having become aware of the gift deeds relating to the California properties, contacted a lawyer for the purpose of filing a lawsuit to set aside the deeds to the California properties. In September of 1971, an action was filed in

the name of Mrs. Prather to set aside those two gift deeds, but that action was voluntarily dismissed by Mrs. Prather two months later.

In January, 1972, Wendell Keenan, Jr. contacted a lawyer and gave him instructions as to the preparation of a will for execution by Mrs. Prather. He testified that he simply conveyed the wishes of Mrs. Prather to the lawyer. Although clearly Mrs. Prather had been literate and had in the past conducted her own business affairs, her execution of that will was accomplished by marking an X. In that instrument, Mrs. Prather purported to bequeath $500.00 each to her three daughters, respondents here, Brooks, Rattle and Taylor, and purported to give the entire residue of her estate to appellant Keenan. The Idaho mining properties in controversy here were specifically named as a part of that residue. Wendell Keenan, Jr. was named to be executor of the will and his wife as an alternative executrix, both to act without bond. Mrs. Prather died January 30, 1972 and that will, at the time of the argument of this appeal, was being probated in California.

We deem the circumstances involving the will as passing strange in view of appellant's allegations in her complaint that at the time of the execution of the gift deed (October 24, 1970), which is the subject of this action, Mrs. Prather was of an advanced age and infirm condition and incapable of transacting business or comprehending the nature and effect of signing such a deed and hence subject to the undue influence, fraud and deceit practiced by the respondents.

As indicated above, the court granted defendants-respondents' motion for involuntary dismissal pursuant to I.R.C.P. 41(b), on the ground that under the facts and the law, plaintiff had shown no right to relief. We note initially that when a defendant moves for an involuntary dismissal at the close of the plaintiff's presentation in a non-jury case, the court sits as a trier of fact and is not required to construe all evidence and inferences to be drawn therefrom in the light most favorable to the plaintiff. *Sorenson v. Adams*, 98 Idaho 708, 571 P.2d 769 (1977); I.R.C.P. 41(b); *see Stratton v. Stratton*, 87 Idaho 118, 391 P.2d 340 (1964). Thus, in rendering a judgment pursuant to the defendants' motion for dismissal under I.R.C.P. 41(b), the trial court is not as limited in its evaluation of the plaintiff's case as it would be in a motion for directed verdict. The court is not to make any special inferences in the plaintiff's favor nor concern itself with whether plaintiff has made out a prima facie case. Instead, it is to weigh the evidence, resolve any conflicts in it, and decide for itself where the preponderance lies. *See* 9 Wright & Miller, Federal Practice and Procedure § 2371 (1971).

The record here is not what one might expect of a plaintiff's case in chief since defendants were called as witnesses by the plaintiff and hence much conflicting evidence was received, albeit during the presentation of plaintiff's case.

The district court filed findings of fact and conclusions of law reflecting the above recited facts and the court found that respondents did not obtain Mrs. Prather's execution of the gift deed by deceit, fraud or misrepresentation. Those findings are all supported by the evidence and will not be disturbed on appeal. The district court further found that Mrs. Prather at all times knew the extent of her property and who her heirs were, and that she was capable and competent to transact business such as the execution of deeds, mining leases, and options to purchase. Those findings likewise are supported by the record and will not be disturbed.

The trial court also found that at the time of the execution of the gift deed in question here, a confidential relationship existed between the grantor, Mrs. Prather, and her daughters, Brooks, Rattle and Taylor, and that Mrs. Prather had the greatest confidence and trust in and felt secure in relying and acting upon the advice and representation of her said daughters. It is appellant Keenan's principal contention on appeal that such existence of a confidential relationship, coupled with a lack of consid-

eration for the conveyance, an absence of any independent advice and the grantees participation in the preparation of the deed, creates a presumption of undue influence placing on the grantees of the conveyance the burden of establishing, by clear and convincing evidence, that the conveyance was free of fraud and undue influence.

In support of the above contention of the appellant, principal reliance is placed on *McNabb v. Brewster*, 75 Idaho 313, 272 P.2d 298 (1954). Assuming only for discussion purposes that the record supports the assertions of the appellant relating to the existence of a confidential relationship, the lack of independent advice and the participation by the grantees in the preparation of the gift deed, we nevertheless do not agree that the facts of this case, as disclosed in the record, give rise to or require the application of such a presumption of undue influence.

The rule of *McNabb v. Brewster, supra,* was based on facts very different from those of the case at bar. In *McNabb* the Court was careful to point out that the execution of the conveyance by the grantor left her a pauper without means of support. Further, in *McNabb* the execution of the conveyance was coupled with a promise of future support of the grantor, which promise was not fulfilled. Further, the execution of the conveyance resulted in the other daughter of the grantor being completely disinherited. *See also Wyman v. Dunne*, 83 Idaho 179, 359 P.2d 1010 (1961); *In re Lunders' Estate*, 74 Idaho 448, 263 P.2d 1002 (1953); *Estate of Randall*, 64 Idaho 629, 135 P.2d 299 (1942); Note, *Undue Influence— Judicial Implementation of Social Policy*, 1968 Wis.L.Rev. 568.

The literal language of *McNabb* has been questioned by later decisions of this Court, as has the continued viability of a rule establishing a presumption of undue influence. *See Englesby v. Nisula*, 99 Idaho 21, 576 P.2d 1055 (1978); *Mollendorf v. Derry*, 95 Idaho 1, 501 P.2d 199 (1972); *Kelley v. Wheyland*, 93 Idaho 735, 471 P.2d 590 (1970).

This Court's most recent decision in this area of the law indicates the basic elements necessary to the establishment of a prima facie case of undue influence. One of those elements was a "result which appears to be the effect of the exercise of undue influence." *Gmeiner v. Yacte*, 100 Idaho 1, 7, 592 P.2d 57, 63 (1979). In *Gmeiner* it was noted that a result is suspicious if it appears "unnatural, unjust or irrational," and if there appears a departure from the "natural and expected," the entire transaction should be closely scrutinized by the Court. *Id.* at 7, 592 P.2d at 63.

We hold that in the instant case, a close scrutiny of the entire record and an analysis of the result of the execution of the gift deed supports the findings and conclusions of the trial court that the evidence did not give rise to a presumption of undue influence.

There is no indication in the record of any reason why Daisy Prather should have disfavored her daughters, Brooks, Rattle and Taylor, to the benefit of her daughter Keenan. On the contrary, the record reveals a continuous and normal mother-daughter relationship between each of the defendants-respondents and their mother. Correlatively, there is no showing of any disfavor shown by Mrs. Prather toward her daughter Keenan. On the contrary, the record, particularly that portion relating to the will of Mrs. Prather, indicates the closest and most confidential relationship existing between Mrs. Prather and her daughter Keenan and other members of the Keenan family. Our consideration as to whether the result of the execution of the gift deeds to the Idaho property is suspicious as being "unnatural, unjust or irrational" must also reflect, of course, the fact that seven months prior to the execution of the deeds in question herein, Mrs. Prather had conveyed to her daughter Keenan the ranch in California by what was, in effect, a gift. Although no specific finding was made by the trial court regarding the value of the various properties, the record indicates a relatively even distribution of Mrs. Prather's property between her four daughters.

In summary, the record and the evidence therein would not support a finding that the "result [of the gift deed at issue here] appears to be the effect of the exercise of undue influence." *Gmeiner v. Yacte, supra.* Having scrutinized the entire transaction closely as it is reflected in the record. We cannot say that the property disposition at question here departs from the normal or raises a red flag of warning. Hence, the basic elements necessary to the arising of an inference of undue influence and a shifting of the burden of proving the contrary thereof to the grantees did not arise in the case at bar. The trial court, therefore, was correct in granting respondents' motion for involuntary dismissal at the conclusion of plaintiff's case in chief.

We have examined appellant's additional assignments of error relating to alleged improper delivery of the deed in question here and find them to be without merit.

The judgment of the trial court is affirmed. Costs to respondents.

DONALDSON, C. J., and BAKES, McFADDEN and BISTLINE, JJ., concur.

BISTLINE, Justice, specially concurring.

Once again the validity of *McNabb v. Brewster,* 75 Idaho 313, 272 P.2d 298 (1954), is questioned by the Court. In order to properly understand *McNabb,* it is only necessary to observe the distinctions between the terms "burden of proof," "burden of persuasion," and "burden of producing evidence."

The term "burden of proof" subsumes the two distinct procedural problems of "burden of persuasion" and "burden of producing evidence." *Cole-Collister Fire Protection District v. City of Boise,* 93 Idaho 558, 569, 468 P.2d 290, 301 (1970); *Harman v. Northwestern Mutual Life Insurance Co.,* 91 Idaho 719, 721, 429 P.2d 849, 851 (1967); G. Bell, Handbook of Evidence for the Idaho Lawyer 215 (2d ed. 1972); McCormick on Evidence § 336 (2d ed. 1972); Thayer, The Burden of Proof, 4 Harv.L.Rev. 45 (1890). As stated in one text:

"In its strict sense, the term [burden of proof] denotes the duty of establishing the truth of a given proposition or issue by such a quantum of evidence as the law demands in the case in which the issue arises, whether civil or criminal. In a secondary sense the term 'burden of proof' is used to designate the obligation resting upon a party to meet with evidence a prima facie case created against him—that is, the duty of proceeding with evidence at the beginning, or at any subsequent stage, of the trial in order to make or meet a prima facie case. The burden of proof in this secondary sense means, in short, the necessity of going forward with the evidence, and it is sometimes expressed by the term 'burden of evidence.'" (Footnotes omitted.) 29 Am.Jur.2d *Evidence* § 123 (1967).

Thus, although the term "burden of proof" can be used interchangeably with the other two terms because it incorporates them both, such use often leads to confusion. As noted by one commentator, "[w]hile the bulk of the decisions in Idaho treat the two burdens as one and fail to make the differentiation . . . [i]t would seem that a careful demarcation between the two burdens would make the Idaho decisions of greater value as guides to the lower courts." Bell, *supra* at 216–17. Although this Court has made the distinction in the past, *e. g., Cole-Collister Fire Protection District v. City of Boise,* 93 Idaho 558, 569, 468 P.2d 290, 301 (1970); *Harman v. Northwestern Mutual Life Insurance Co.,* 91 Idaho 719, 721, 429 P.2d 849, 851 (1967), a reading of *McNabb* and the authorities relied on there shows that the Court in *McNabb* failed to specifically make the distinction between the burden of producing evidence and the burden of persuasion.

In *McNabb* the Court quoted in apparent approval the Supreme Court of California in *Sparks v. Mendoza,* 83 Cal.App.2d 511, 189 P.2d 43 (1948), for the proposition that a parent-child relationship with the parent dependent upon the child raises the presumption that an inter vivos gift from the parent to the child is fraudulent, *"shifting*

the burden of proof to the grantee to show fairness and good faith in the transaction . . . ." (Emphasis added.) 75 Idaho at 320, 272 P.2d at 302, quoting 189 P.2d at 45.

The California court in *Sparks* relied on, among other cases, *Johnson v. Clark*, 7 Cal.2d 529, 61 P.2d 767 (1936), as authority for the statement quoted in *McNabb* that it is the burden of proof which shifts. The court in *Johnson* made the following statements: "the burden is cast upon the party who has gained the advantage *to show* fairness and good faith in all respects. . . . The burden is cast upon defendant to allege *and prove* the fairness of the transaction." (Emphasis added.) 61 P.2d at 769–70. The other cases relied on by the court in *Sparks* held that it was the burden of producing evidence which shifted. In fact, in *Sparks* itself the court went on in a later paragraph to note that upon the arising of the presumption of fraud and undue influence, "[t]he burden was therefore cast upon plaintiff *to show* that the transaction was free from fraud and undue influence, and in all particulars fair." (Emphasis added.) 189 P.2d at 45.

It becomes apparent that the California courts in the cases relied on by *McNabb* were interchangeably using "burden of proof" and "burden of producing evidence," but in so doing they were aware that they were not shifting the burden of persuasion. Although the Court in *McNabb* did not discuss this matter, it did quote *Campbell v. Genshlea*, 180 Cal. 213, 180 P. 336 (1919), for the proposition that where a parent-child relationship exists, "a strong presumption of confidential relation arises which *would*

place upon the beneficiary in the transaction the burden of showing fairness in dealing . . . ." (Emphasis added.) 75 Idaho at 320, 272 P.2d at 302, quoting 180 P. at 341. Properly understood, the California court's view of the legal effect of the presumption involved is compatible with our recent holding in *Gmeiner v. Yacte*, 100 Idaho 1, 8, 592 P.2d 57, 64 (1979), and, although the distinction was not specifically set forth in *McNabb*, *McNabb* should henceforth be read as standing for the proposition that it is the burden of going forward sufficiently to dispel the presumption which shifts—not the burden of persuasion.

Ordinarily the distinction between the burden of proof and the burden of going forward ought not to be troubling. Where a fiduciary relationship is established, it behooves the allegedly fraudulent grantee to put on enough of a case to dispel any presumption. The burden of proof (more aptly, the burden of persuasion) remains on the party alleging the fraud, but in most cases both parties will have produced evidence and burden of proof (burden of persuasion) comes into play only when the evidence is in equipoise. *See generally Cole-Collister Fire Protection District v. City of Boise*, 93 Idaho 558, 563–64, 569, 468 P.2d 290, 295–96, 301 (1970).

DONALDSON, C. J., concurs.