621 P.2d 394

Herbert J. MORRIS and Arlene M. Morris, husband and wife, Plaintiffs–Appellants,

v.

Lothair W. FRANDSEN, and I. Glen Perkins and Mary D. Perkins, husband and wife, and Charles M. Frandsen, Defendants–Respondents.

No. 13153.

Supreme Court of Idaho.

Dec. 5, 1980.

Rehearing Denied Jan. 23, 1981.

Lyle D. Eliasen, American Falls, Bruce S. Bistline, Pocatello, for plaintiffs–appellants.

William W. Becker, Pocatello, for defendants–respondents.

SHEPARD, Justice.

This is an appeal from the dismissal of plaintiffs' case of a quiet title action involving a strip of land along the boundary line between two government lots abutting the Portneuf River in Bannock County. The cause was tried to the court, which granted the motion to dismiss at the close of plaintiffs' case. We remand to the district court for additional findings and conclusions.

One James Rikos owned a tract of land consisting of lots 5 and 6 in Section 22, Township 9 South, Range 38 East, in or near Lava Hot Springs in Bannock County, Idaho. The lots consist of approximately 35 and 15.75 acres, respectively, and are typical of "government lots" so designated by the U.S. government survey when those surveys encounter a navigable stream such as the Portneuf River.

In 1970 Rikos conveyed to one Ralph Hampton "lot 6 of Section 22, Township 9 South, Range 38 E.B.M. in the village of Lava Hot Springs, in Bannock County, Idaho, according to the United States survey thereof. . . ." Rikos retained lot 5. In 1972 Hampton contracted to sell said lot 6 to one Charles Frandsen, who in turn conveyed the land to L. W. Frandsen, and the latter Frandsen, in 1974, conveyed a one–half interest thereof to Glen and Mary Perkins. In each instance the legal description quoted above was used by Hampton and his successors in all relevant documents. The Frandsens and Perkinses are the defendants–respondents.[1] In 1975 Rikos contract-

---

1. So far as the record indicates, defendants–respondents hold only an equitable interest in lot

6. The legal title remains in Hampton, who is not a party to this action.

ed to sell the remaining lot 5 to the Morrises, the plaintiffs–appellants in this action.[2] The said lots 5 and 6 abut each other and the property which is the focus of this dispute is a strip of land 178 feet in width lying along the U.S. government surveyed boundary line between said lots 5 and 6.

The Morrises presented evidence at trial that during the Rikos–Hampton negotiations prior to that conveyance of lot 6, Rikos and Hampton went upon the property, at which time Rikos pointed out an old fence line as representing the boundary between lots 5 and 6. It is undisputed that said fence was not in fact located on the government surveyed boundary between lots 5 and 6, but rather was located some 178 feet west of the actual boundary line.

It is plaintiffs–appellants' theory on appeal that their predecessor, Rikos, conveyed and defendants–respondents' predecessor, Hampton, purchased only a portion of lot 6 and that the subsequent Rikos–Hampton deed which described lot 6 in its entirety was the result of the mutual mistake of Rikos and Hampton. The Morrises further contend that Hampton could convey no greater area to defendants–respondents than he actually owned.

It is conceded that during the time the Morrises were negotiating with Rikos for the purchase of lot 5 and prior to the time they executed the contract of purchase, the boundary dispute had arisen and a survey had confirmed that the fence line was not the government surveyed boundary between lots 5 and 6. For that reason, the negotiated price was reduced $10,000, and Rikos executed and placed into escrow a warranty deed for lot 5 and a quitclaim deed for the disputed portion of lot 6.

At the conclusion of the presentation of plaintiffs' case at trial, defendants moved to dismiss. Oral argument was had thereon and the parties were requested to, and presumably did, submit briefs. The arguments or briefs of the parties are not of record.

Thereafter, a memorandum decision of the court was issued in which the trial court stated that a review of the evidence revealed plaintiffs' attempt to show an oral agreement between Rikos and Hampton establishing the boundary between lots 5 and 6 at a location other than the surveyed boundary. "The Court notes that the plaintiffs were not a party to any such oral agreement nor did they rely upon this alleged agreement at the time they purchased." No more was said by the trial judge regarding said theory. All further remarks went to the elements of adverse possession and plaintiffs' failure to establish the existence of these elements. The following findings of fact and conclusions of law were thereafter entered:

## "FINDINGS OF FACT

"1. The Plaintiffs were not a party to any oral agreement establishing the boundary between the land of the Plaintiffs and the Defendants.

"2. The boundary line asserted by the Plaintiffs was not monumented by a clearly defined and existing fence line.

"3. The land claimed adversely possessed by the Plaintiffs was not surrounded by a substantial enclosure erected or maintained by the Plaintiffs.

"4. The Plaintiffs were aware of the uncertain boundary and, in recognition of it, paid a reduced price for the purchase of the land.

"5. The Plaintiffs paid no taxes on any portion of the land they claimed to have adversely possessed."

## "CONCLUSIONS OF LAW

"The Plaintiffs have failed to sustain their burden of proof by showing, in accordance with the requirements of Chapter 1 of Title 5 of the Idaho Code, that they protected the claimed land by substantial enclosure; that they have erected

---

2. Like defendants–respondents, the Morrises appear to have only an equitable interest in lot

5, the legal title of which remains in Rikos. Rikos is not a party.

or maintained a fence line or other structure clearly defining the boundary of the disputed area at an agreed location; that they adversely possessed the disputed area for a continuous period of five years; or that they paid taxes levied and assessed upon the disputed land for that period."

On appeal, the Morrises do not argue that they are entitled to the disputed area by reason of adverse possession. They rely only on the contention that their predecessor, Rikos, never parted with the eastern 178 feet of lot 6, albeit the contract and deed recite a conveyance of the entire lot. In our view, the pleadings of plaintiffs–appellants were broad enough to encompass the theory of an agreed upon boundary line between the predecessors of the parties. The plaintiffs' evidence presented at trial appears to have been in conformity with that theory.

■ An involuntary dismissal pursuant to I.R.C.P. 41(b), is a judgment on the merits against the plaintiff and requires the court to make findings of fact and conclusions of law as required by Rule 52(a). *Sorenson v. Adams*, 98 Idaho 708, 571 P.2d 769 (1977).

■ I.R.C.P. 52(a) requires the judge in all actions tried without a jury to "find the facts specially and state separately [his] conclusions of law thereon and direct the entry of the appropriate judgment. . . ." The rule further provides that "if an opinion or memorandum decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein." The purpose of such a rule is to assist the appellate court by affording it a clear understanding of the basis of the lower court decision. *Perry Plumbing Co. v. Schuler*, 96 Idaho 494, 531 P.2d 584 (1975); *In re Estate of Stibor*, 96 Idaho 162, 525 P.2d 357 (1974); *Merrill v. Merrill*, 83 Idaho 306, 362 P.2d 887 (1961). Appellate review is necessarily limited to ascertaining whether the evidence supports the findings of facts, and whether the findings of fact support the conclusions of law.

■ In the instant case, we are unable to perform the appellate function because neither the memorandum decision, findings of fact, nor conclusions of law specifically address the agreed upon boundary theory. We are not privy to the oral arguments and briefs of the parties which may have led the lower court to address only the theory of adverse possession. Thus, failure to make specific findings and conclusions regarding plaintiffs–appellants' theory of an agreed upon boundary necessitates remand. *Stecklein v. Montgomery*, 98 Idaho 671, 570 P.2d 1359 (1977); *Perry Plumbing, supra.*

We do note that I.R.C.P. 52(b) affords a party the opportunity to file a motion requesting the court to amend or supplement its findings and conclusions. Had plaintiffs–appellants availed themselves of this opportunity, this appeal might have been avoided.

Although Rikos testified that he believed the remnants of the fence represented the actual boundary and that he so indicated to Hampton, he also repeatedly testified that he believed lot 6 contained 15.75 acres and lot 5 contained 35 acres, and that he sold Hampton the entire 16 acre lot. The trial judge could justifiably conclude that the only mistake involved was Rikos' belief as to the location of the true boundary line rather than a mistake in the Rikos–Hampton document of conveyance. We must, of course, leave that determination to the trial judge.

■ Plaintiffs–appellants also assert as error the trial court's failure when considering the motion for involuntary dismissal, to view all testimony and reasonable inferences arising therefrom in the light most favorable to the plaintiff. That contention is simply erroneous. When a defendant moves for dismissal at the close of the plaintiff's presentation of the evidence in a non–jury case, the court sits as a trier of fact and is not required to construe the evidence and inferences to be drawn therefrom in the light most favorable to plaintiff. *Keenan v. Brooks*, 100 Idaho 823, 606 P.2d 473 (1980); *B & F Inc. v. Intermountain Gas Co.*, 99 Idaho 730, 588 P.2d 458 (1978); *Sor-*

*enson v. Adams, supra;* I.R.C.P. 41(b). "The court is not to make any special inferences in the plaintiff's favor nor concern itself with whether plaintiff has made out a prima facie case. Instead, it is to weigh the evidence, resolve any conflicts in it, and decide for itself where the preponderance lies." *Keenan v. Brooks, supra* 100 Idaho at 825, 606 P.2d at 475.

The order of the trial court dismissing plaintiffs' case is reversed and the cause remanded for additional findings of fact and conclusions pursuant to this opinion. In the event the trial court determines such findings and conclusions cannot be made on the basis of the existing record, it is, of course, at liberty to re–open the matter for the taking of further evidence.

No costs allowed.

DONALDSON, C. J., and BAKES, McFADDEN and BISTLINE, JJ., concur.