72 P.3d 858

**In the Interest of Jane Doe, John Doe, Children Under the age of 18 years of age and Jane Doe I.**

**STATE of Idaho, DEPARTMENT OF HEALTH AND WELFARE, Petitioner–Respondent,**

v.

**Jane ROE, Respondent–Appellant.**

**No. 28003.**

Supreme Court of Idaho.
Boise, March 2003 Term.

June 18, 2003.

John M. Adams, Kootenai County Public Defender; Martin T. Neils, Kootenai County Deputy Public Defender, Coeur d'Alene, for appellant. Martin T. Neils argued.

Hon. Lawrence G. Wasden, Attorney General; Jason Bartholomew Siems, Deputy Attorney General, Boise, for respondent. Jason B. Siems argued.

WALTERS, Justice.

This is an appeal from the dismissal of a petition for termination of a parent-child relationship. At the close of the evidence presented by the petitioner, a magistrate judge granted the parent's motion to dismiss the petition on the basis that the petitioner had failed to prove its case. The magistrate's decision was reversed by the district court on an intermediate appeal. The parent, Jane Roe, appeals from the district court's appellate decision. We affirm the order of dismissal entered by the magistrate.

## BACKGROUND

The history of this case spans more than a dozen years. Jane Roe's three minor children, two girls and a boy, were the subjects of a Child Protective Act petition brought by the Department of Health and Welfare in the spring of 1990, which led to the temporary placement of the children in foster care. In 1991 and 1992, the custody of the children continued in temporary foster care after the magistrate heard evidence on motions to renew filed by the Department. The Department subsequently filed a motion to modify the custody to permanent foster care, based upon the alleged best interests of the children; and in August of 1993, the magistrate ordered that the custody of the children be continued in the Department until the children reached the age of eighteen, pursuant to I.C. § 16–1601C. Jane Roe appealed the permanent custody order to the district court, which affirmed. Roe then appealed the decision of the district court. The Idaho Court of Appeals affirmed the order granting permanent custody in the Department. The appellate court concluded that the evidence supported the magistrate's finding that the special needs of the children required permanent foster care. *See In the Interest of S.W., D.Q., S.T.*, 127 Idaho 513, 903 P.2d 102 (Ct. App.1995).

After the order for permanent foster care was affirmed on appeal, the Department filed in December, 1996, a petition for termination of parent-child relationship with respect to the rights of Jane Roe and the fathers of two of the minor children. The petition related to the two minor girls and did not include the third child, a boy who was severely-disabled as a result of Down syndrome and who had special needs that were best served by continuing the permanent foster care adjudication. The petition under I.C. § 16–2005(a)(b) and (e) sought to terminate the parental rights in the best interests of the parents and the female children because of abandonment and neglect. Hearings before the magistrate were held over several days from May of 1997 through March of 1998. At the conclusion of the Department's case on March 24, 1998, Jane Roe's attorney moved to dismiss the petition for insufficient evidence. The magistrate entered an order granting the motion to dismiss on the following basis:

(1) That the Petitioner's [sic] failed to meet the constitutionally mandated standard pursuant to I.C. 16–2005, showing by clear and convincing evidence the existence of circumstances under which parental termination may be granted,

(2) That the defendant, [Jane Roe], did attempt to maintain a normal parental relationship and provided reasonable support. The evidence presented herein contained ample evidence of the defendant's attempt to maintain contact with her daughters ... by telephone, mail and through repeated requests for visitation.

(3) There was no evidence submitted regarding neglect or abuse due to the children's prior placement in permanent foster care,

(4) The defendant [Jane Roe] did not agree or consent to termination of her parental rights.

(5) The best interests of the parent and children will be served by maintaining the parent/child relationship.

The Department filed a notice of appeal. The district court, on July 28, 1999, issued a memorandum opinion affirming the magistrate's decision insofar as finding that the Department had failed to prove Jane Roe had abandoned her children. However, the district court reversed the magistrate's decision with regard to the allegation of neglect. The district court remanded the case to the magistrate to clarify his findings regarding the best interests of the children. The district court directed the magistrate to consider the standard applicable to findings of neglect in a situation where the parent was being evaluated during a time when the children were in foster care, in light of the mother's previous actions, her conduct since that time and future possibilities.

At the conclusion of the hearing on remand, the magistrate again granted Jane Roe's motion to dismiss on the ground that the Department had not met its burden to show by clear and convincing evidence that Jane Roe neglected her children. The Department again appealed from the order of dismissal. In the meantime, the older of the two children attained the age of majority and was no longer the subject of the termination proceeding.

By opinion dated October 9, 2001, the district court reversed the magistrate's order dismissing the petition for termination of Jane Roe's parental relationship with the remaining child, Jane Doe (known as S.W. in the case decided by the Court of Appeals). The district court, in its opinion, reviewed the history of the case, beginning with the terms of the Child Protection Act, which has long contemplated termination proceedings arising during the pendency of commitment, and I.C. § 16–2005 as it existed when the termination petition was filed in 1996. The district court recited that the magistrate's initial finding of neglect in the Child Protection Act proceeding had remained undisturbed and served as the basis for the court's role regarding the placement of the child. The district court reasoned: "It is logical that this finding of neglect can ripen to the level of clear and convincing evidence and serve as a basis for the court's ultimate decision to terminate parental rights if that is what is in the best interests of the child." Based on the magistrate's direction to the Department in the Child Protection Act proceeding to file termination papers if further progress was not made, the district court found that factor alone "would suggest that absent further progress by the parents over a three-year period during which the children were in State care and the Department was actively engaged in reunification efforts, that a clear and convincing case of neglect exist[s] upon which to base termination." The district court considered that since the entry of the permanent foster care order, there was no likelihood that Jane Doe would be returned to her mother. The district court recognized Roe's only sporadic visits or interaction, her involuntary financial support, the lack of any normal attachment of the child for her mother and lack of interest in continuing any relationship, and the child's expressed desire to be adopted by the foster family with whom she had lived over the previous eleven or twelve years. Finally, the district court reached "an inescapable conclusion" by clear and convincing evidence that Roe has neglected her child as defined in I.C. § 16–2005(b).

From the opinion of the district court reversing the magistrate's dismissal order, Jane Roe appeals pursuant to I.A.R.

11(a)(2).[1]

## ISSUE ON APPEAL

Roe states the issue presented in this appeal as: Did the district court err when it found that there was no substantial and competent evidence supporting the trial court's finding that the Department failed to establish that Jane Roe neglected her minor child by failing to exercise the proper parental care and control necessary for her well-being?

## STANDARD OF REVIEW

■ In a proceeding to terminate a parent-child relationship, the due process clause mandates that the grounds for termination must be shown by clear and convincing evidence. *In the Interest of Baby Doe,* 130 Idaho 47, 53, 936 P.2d 690, 696 (Ct.App.1997); *State, Dept. of Health & Welfare v. Cheatwood,* 108 Idaho 218, 697 P.2d 1232 (Ct.App. 1985). It is for the trial court to determine whether clear and convincing evidence supports the termination of parental rights. *In the Interest of Crum,* 111 Idaho 407, 409, 725 P.2d 112, 114 (1986). Whether the required burden of proof on a particular issue has been met is a question for the trier of fact to decide in the first instance inasmuch as that court has the primary responsibility for weighing the evidence. *In re Estate of Bogert,* 96 Idaho 522, 526, 531 P.2d 1167, 1171 (1975), *citing In re Estate of Cooke,* 96 Idaho 48, 524 P.2d 176 (1973). The trial court's decision that a claim has not been proved is entitled to great weight on appeal. *Id.; County of Canyon v. Wilkerson,* 123 Idaho 377, 848 P.2d 435 (Ct.App.1993).

This Court has held that when a defendant moves for an involuntary dismissal at the close of the plaintiff's presentation in a nonjury case, the court sits as a trier of fact and is not required to construe all evidence and inferences to be drawn therefrom in the light most favorable to the plaintiff. *Clear Springs Foods, Inc., v. Clear Lakes Trout Co.,* 136 Idaho 761, 40 P.3d 119 (2002), *citing*

*Keenan v. Brooks,* 100 Idaho 823, 825, 606 P.2d 473, 475 (1980). Thus, in rendering a judgment pursuant to the defendant's motion for dismissal under I.R.C.P. 41(b), the trial court is not as limited in its evaluation of the plaintiff's case as it would be in a motion for directed verdict. *Id.* The court is not to make any special inferences in the plaintiff's favor nor concern itself with whether the plaintiff has made a prima facie case. *Id.* Instead, the court is to weigh the evidence, resolve any conflicts in it, and decide for itself where the preponderance lies. *Id.*

■ Where the lower court reaches a determination that is contrary to the claim alleged by a party, based on the evidence presented on both sides of the issue, the court effectively decides that the evidence is insufficient to support that party's contention. *County of Canyon v. Wilkerson, supra; Sivak v. State,* 119 Idaho 211, 804 P.2d 940 (Ct.App.1991). In *Viehweg v. Thompson,* 103 Idaho 265, 647 P.2d 311 (Ct.App.1982), our Court of Appeals characterized this as a "negative" finding, i.e., that a party has failed in its burden of proof. On appeal, the appellate court's standard for review of such a finding is to determine if the lower court's decision is "clearly erroneous." *Id., citing* I.R.C.P. 52(a). Under the restrained standard of clear error customarily applied to factual issues, a factual finding will not be deemed clearly erroneous unless, after reviewing the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made. *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 766 (1948), cited in *Quick v. Crane,* 111 Idaho 759, 768, 727 P.2d 1187, 1196 (1986); IDAHO APPELLATE HANDBOOK, *Standards of Appellate Review,* § 3.3.2 (2d ed.1989). Finally, clear error will not be deemed to exist if the findings are supported by substantial and competent, though conflicting, evidence. *Barber v. Honorof,* 116 Idaho 767, 780 P.2d 89 (1989), *citing Rasmussen v. Martin,* 104 Idaho 401, 659 P.2d 155 (Ct.App.1983). On

---

1. An appeal as a matter of right may be taken to the Supreme Court from the following judgments and orders:
* * *

(2) Decisions by the district court dismissing, affirming, reversing or remanding an appeal. . . .

appellate consideration, we defer to the trial court's special opportunity to determine the credibility of the witnesses who have testified, *Sivak v. State, supra,* and to weigh the evidence presented. *In re Estate of Bogert,* *supra.*

## DISCUSSION

■ The subject of this appeal, as previously stated, is Jane Doe, who was six years of age at the time of the permanent foster care order in 1993 and nine years old when the termination proceeding was commenced in 1996. The role of the magistrate was to determine whether the Department proved by clear and convincing evidence that the mother, Jane Roe, met any one of the conditions identified in I.C. § 16-2005 under which termination of her parental rights might be granted. Through the previous proceedings in this case, the question of grounds for termination was reduced to the issue of neglect, under I.C. § 16-2005(b).

The mother, Jane Roe, suffers from medical problems including nerve damage, brain damage, blackouts, and arthritis, which were caused by lead poisoning during her childhood and have been an obstacle to her maintaining employment as an adult. Her primary income has been a $307 monthly payment from insurance as settlement of a lawsuit against Bunker Hill Mining. Through mandatory withholding of half of the settlement income, Roe has been paying child support since December 1996.

In its oral findings made at the conclusion of the initial hearings in the case, the magistrate explained that Roe had indeed made child support payments, regardless of whether they were accomplished by a court order. The magistrate rejected any suggestion by the Department that Roe's failure to make some support payments or that garnishment was required indicated any willfulness on Roe's part not to provide reasonable support to her children, as specified in I.C. § 16-2005.

As to the element of regular personal contact, the magistrate made a finding that Roe had made many attempts to call her children, but there was disputed testimony regarding how often she was allowed to talk to the girls either because they were not available, were unable to come to the phone, or were kept from taking her calls by the foster mother. Roe testified that she had sent letters and gifts, but resorted to giving the children gifts when she personally saw them because she had reason to believe that the letters were not given to the children. She also learned that the gifts were being rejected by the girls and returned.

Shortly after the entry of the permanent foster care order, the time that Roe was allowed to visit with her daughters was reduced from one hour once a month at her residence to once every three months. All of the visitations following the permanent foster care order were at the local Health and Welfare office, in a twelve-foot room in the presence of staff and the foster mother who were behind a two-way mirror. Roe testified that she missed some of the scheduled visitation for transportation reasons or because of changes that had to be made to the schedule on both sides. She claimed she missed a review hearing in December of 1995, but she attended all the others. Roe's requests for more visitations were denied and eventually, the children were given the discretion to decide whether future visitation would take place. Roe's efforts to contact Jane Doe by phone were unsuccessful, and her other attempts to communicate with the child were also unavailing.

The testimony from case workers, Wes Isbell and Warren Middlemist, indicated that Roe made very minimal efforts to see her children, showed very little interest in them and failed in their estimation to have what appeared to be a nurturing, caring relationship between a mother and her children, even though there was no likelihood that the family would be reunited. According to their testimony, Roe was not providing the parental care necessary for the health, morals and well-being of her children. There was a dispute in the testimony as to whether counseling was suggested and rejected or whether Roe asked for family counseling with the girls but was told there were no funds for that purpose.

The magistrate recognized that Roe could have done more to maintain a positive and healthy relationship with her children, including giving all letters and gifts to the Department and having the girls sign for them to document her efforts and assure that the gifts and letters reached the children. The magistrate, however, put an equal share of fault on the Department, which seemed only to be advocating termination of Roe's rights as opposed to fostering a good relationship between Roe and her daughters. Roe refused to consent to have the children adopted.

Middlemist testified that when he took over the case late in 1995, Roe's relationship with the Department had deteriorated and she was resistant to his suggestions that they sit down and work on a plan to rehabilitate her relationship with the children. Just before Middlemist took over the case from Isbell, the visitation arrangement ceased entirely because the girls evidently didn't want to see their mother. The magistrate noted, however, that there was only testimony from the foster mother that the girls were traumatized by the visits that they neither looked forward to nor wanted to continue, even as limited as it was. In this respect too, the magistrate found that Roe could not be blamed for lack of interest when her children were given the discretion not only to refuse visits but also to reject her gifts and letters. The testimony from the caseworkers and from Roe presented issues of credibility that were resolved by the magistrate through his decision in favor of dismissing the petition because the Department had not satisfied its burden of showing by clear and convincing evidence that Roe had neglected her children.

In his supplemental findings following remand of the case from the district court, the magistrate reiterated his concerns regarding the possibility that the foster parents who had expressed a desire to adopt the girls were alienating the children from their mother, either consciously or subconsciously. The magistrate considered whether Roe engaged in behavior subsequent to the permanent foster care order that constituted neglect in the sense that a child is not provided the paren-

tal care necessary for his or her health, morals and well-being. The magistrate did not alter his original findings that Roe had made many efforts to provide parental care within the limitations imposed by the permanent foster care circumstances, but had been thwarted for any number of reasons. The magistrate opined that Roe was allowed such minimal contact with her daughters that she was in effect not able to provide morals to her daughters; she was not really allowed to do anything. The magistrate did not attribute the change in the relationship between Roe and Jane Doe to Roe, where the testimony showed that Jane Doe had "warmed up" to Roe in the beginning. The magistrate concluded that a finding of neglect should not be made simply because the children are in the long-term care of foster parents. The magistrate restated his original conclusion that grounds for termination had not been established by clear and convincing evidence. Because that the magistrate did not find a ground for termination, he did not reach the question of whether termination would be in the best interests of the child.

The magistrate weighed conflicting evidence in arriving at his conclusion that the Department failed in its burden to establish by clear and convincing evidence that Roe's relationship with Jane Doe should be terminated on the basis of neglect. We hold that the magistrate did not clearly err in granting the motion to dismiss the petition.

## CONCLUSION

The magistrate did not commit error in dismissing the petition for termination of parent-child relationship. The order of dismissal is affirmed. Because legal representation has been provided to Roe at public expense, no costs or attorney fees are allowed.

Justices SCHROEDER, KIDWELL and EISMANN, concur.

Chief Justice TROUT dissents without opinion.